NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Keith DYMNIOSKI and Joann DYMNIOSKI, <br><br> Plaintiffs, <br><br> v. <br><br> CROWN EQUIPMENT CORPORATION, et al., <br><br> Defendant. | Civ. No. 11-3696 <br><br> OPINION |

THOMPSON, U.S.D.J.

      This matter has come before the Court on Defendant Crown Equipment Corporation's ("Crown") Motion for Judgment on the Pleadings[1] brought pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, a Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56 [docket #13]. Plaintiffs Keith Dymnioski and Joann Dymnioski ("Plaintiffs") oppose Crown's motion [17] and have filed a Cross-Motion to Amend [16]. Crown opposes Plaintiffs' cross-motion [20]. The Court has decided these motions after considering the submissions of the parties and without oral arguments pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, Defendant's Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment will be denied and Plaintiffs' Cross-Motion to Amend will be granted.

---

[1] Both parties incorrectly refer to this as a motion to dismiss throughout their motion papers.

1

I.      BACKGROUND

Plaintiffs' Original Complaint [1-1] was filed in New Jersey Superior Court on May 26, 2011 and subsequently removed to this Court by Crown on June 27, 2011.  (Notice of Removal) [1].  The Original Complaint consisted of only the following allegations:

> 1. At all times pertinent hereto, defendants, CROWN EQUIPMENT CORPORATION, ABC, INC. (1–25) and/or JOHN DOE (1–25), said names ABC, Inc. (1–25) and John Doe (1–25) being fictitious, were companies and/or individuals, or the successor in interest of such companies and/or individuals, engaged in the design, manufacture, fabrication, assembly, sale lease, repair and/or maintenance of the Crown RC5500 Forklift and/or the component parts thereof.
> 2. On or about July 12, 2009, the plaintiff, KEITH DYMNIOSKI, while in the course of his employment with COSTCO, was injured when he was properly driving the Crown RC5500 forklift and/or the component parts thereof, when he was injured by the said machine causing the plaintiff to sustain a compound femur fracture to his leg.
> 3. At all times pertinent hereto, defendant, COSTCO was the plaintiff's employer.  Said defendant is joined herein for the purposes of discovery only.
> 4. The aforesaid Crown RC550 forklift and/or its component parts thereof were not reasonably fit, suitable or safe for their intended purposes in that they (a) deviated from the design specification, formulae, or performance standard of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b) failed to contain adequate warnings or instructions, or (c) were designed in the defective manner, and, therefore, were defective products within the meaning of N.J.S.A. 2A:58C-1 et seq.
> 5. As a result of the conduct of the defendants, as aforesaid, the plaintiff, KEITH DYMNIOSKI, sustained serious personal injury, incurred and will continue to incur expenses for hospital and medical attention, has been and will continue to be deprived of lost wages, and other economic losses, was and will continue to be prevented from attending to his usual affairs and occupation and has suffered and will in the future suffer pain, permanent disability and loss of quality of life.

(Compl. Count One ¶¶ 1–5).  A second count is contained in the Original Complaint pleading *per quod* damages to Keith Dymnioski's wife, Plaintiff Joann Dymnioski.  (Compl. Count Two ¶¶ 1–3).

This litigation has proceeded based upon this vague factual background for almost a full year.  It was not until April 13, 2012 that Plaintiffs, for the first time, fully explained their theory

2

of this case to Crown by way of an expert report. *See* (Duffy Cert., Ex. Q). Prior to serving this expert report, Plaintiffs were asked on at least eight separate occasions (by the Court's count) to explain their theory of the case so that this civil action could move toward resolution. On each occasion, however, Plaintiffs failed to place the Crown on notice as to a theory of liability.

In their opposition brief to Crown's Motion for Judgment on the Pleadings, Plaintiffs agree with Crown's recitation of the procedural history of this case. (Pls.' Opp. Br. at 1) [17]. This undisputed procedural history is as follows:

- On July 26, 2011, the parties engaged in an initial conference with the Court in which Plaintiffs were unable, when asked by defense counsel, to articulate a theory of liability. The Court reminded the Plaintiffs at that time that simply being injured while using the forklift was insufficient to establish liability. (Duffy Cert. ¶¶ 9–10).

- On September 1, 2011, Crown served Plaintiffs with interrogatories requesting Plaintiffs to set forth all facts in support of their defective design, failure to warn and product defect claims. Plaintiff responded to these interrogatories 18 days after the time permitted to respond pursuant to the Court's Case Management Order with the following response: "To be supplied in expert liability report." (Duffy Cert., Exs. F and G).

- On November 10, 2011, Crown responded by letter, which stated that this response was inappropriate due to the fact the interrogatories sought the underlying facts on which liability is premised, not expert opinion regarding these claims. (Duffy Cert., Ex. I).

- After not hearing a response from Plaintiffs for over one month, Crown sent a follow-up letter on December 28, 2012 requiring Plaintiffs to respond by January 2, 2012 or Defendants would seek to compel a response through a court order. (Duffy Cert., Ex. J).

- Finally, on January 25, 2012, Plaintiffs responded with a revised answer that stated the following: "[A]ll facts known to plaintiff Keither Dymnioski have been provided in discovery heretofore given. Plaintiff Keith Dymnioski lacks the expertise to give answers to questions concerning causation as it may relate to defective design, failure to warn and other product defect claims . . . ." (Duffy Cert., Ex. K).

- Again Defendants sent a letter to Plaintiffs on February 3, 2012, stating that these interrogatories sought "the underlying facts, not expert opinion regarding these claims." Crown further stated that it "is entitled to know what ***facts*** plaintiffs possess in support of their allegations of product defect before an expert report is served." (Duffy Cert., Ex. L (emphasis in original)).

3

- On February 9, 2012, the Court held another discovery status conference and again inquired into Plaintiff's theory of liability against Crown. Plaintiffs' counsel stated only that Mr. Dymnioski injured his leg after hitting a pole while operating the forklift. (Duffy Cert. ¶ 19, 21).

- The Court issued a Revised Scheduling Order that set a deadline for March 1, 2012 for Plaintiff's to respond to Crown's questions regarding Plaintiffs' theory of liability. (Duffy Cert., Ex. M). This date served as the end of written discover.

- This resulted in Plaintiffs sending a letter to Crown's counsel on February 29, 2012 that stated: "I have asked Mr. Dymnioski to describe the accident as best he can. In essence, he advised me that his intent before the accident was to place a pallet on the floor, to stop the vehicle and to dismount from it. He says the pallet reached the floor and he began to pull away from it. He then attempted to stop the vehicle's motion by 'plugging' but the vehicle did not seem to respond. He raised his left leg in order to activate the emergency brake. At the same time he turned the vehicle in order to avoid the building column. The vehicle began to slow but with one leg raised he lost balance and his left leg exited the operator's compartment and was caught between the vehicle and the column." (Duffy Cert., Ex. N).

- Another discovery conference was held on March 28, 2012, at which time Plaintiff continued to take the position that he was entitled to rely on his expert to determine whether a factual basis exists to support plaintiffs' claims and that there is no obligation to plead specific facts in support thereof. (Duffy Cert. ¶ 26–27).

- Based on this position of Plaintiffs, Defendants requested leave to file this pending motion. The Court granted this request and permitted this motion to be filed no later than April 13, 2012. (Duffy Cert., Ex. D).

- On April 13, 2012, Plaintiffs served Defendant with their expert report, which is dated March 23, 2012, that purports to set forth the factual basis for Plaintiffs' claims. (Duffy Cert., Ex. Q).

Following the filing of Crown's motion for judgment on the pleadings or, alternatively, for summary judgment, Plaintiffs cross-moved to amend the Original Complaint. The proposed Amended Complaint appears to limit Plaintiffs' claims to only a design defect claim and names only Crown as a Defendant.[2] In support of this claim, Plaintiffs allege the following factual information:

> 2. On or about July 12, 2009, the plaintiff, KEITH DYMNIOSKI, while in the course of his employment with COSTCO, was injured when he was properly

---

[2] Plaintiff Joann Dymnioski's *per quod* claim also remains in the Amended Complaint. (Am. Compl. Count Two).

>   operating the Crown RC5500 forklift Lift when his left leg became trapped between the body of said forklift and building column.  Plaintiff's left leg was able to leave the operator's compartment when plaintiff lost his balance while trying to stop the vehicle because of the operator's compartment was not properly guarded constituting a design defect in violation of N.J.S.A. 2A:58C-1 et seq.  In addition thereto, defendant CROWN EQUIPMENT CORP. failed to implement a prevention algorithm in its controls.
>   3. The design defect existed at the time the Crown RC5500 forklift was last in the possession and control of the defendant CROWN EQUIPMENT CORP.
>   4. The aforesaid Crown RC5500 forklift and/or its component parts thereof were not reasonably fit, suitable or safe for their intended purposes in that it was designed in a defective manner, and, therefore, was a defective product . . .

(Am. Compl. ¶¶ 2–4).

## II.     LEGAL STANDARD

It has been the accepted and encouraged policy that courts should liberally grant leave to amend pleadings when justice so requires.  *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990).  The determination of a motion to amend falls within the discretion of the trial court and is guided by Federal Rule of Civil Procedure 15(a).  *Foman*, 371 U.S. at 182.

When the movant's request to amend is "a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Id.*  Therefore, before dismissing a complaint under Rule 12(c), "a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

### A.  Futility

An amended complaint is "futile" if it would still fail to state a claim for relief under the Rule 12(b)(6) or 12(c) standard.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Under Rule 12(c) of the Federal Rules of Civil Procedure, a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The standard governing a Rule 12(c) motion is the same standard governing motions to dismiss under Rule 12(b)(6). *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, at *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Therefore, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, the court must determine whether, on these facts, a party is entitled to judgment as a matter of law. *Sikirica*, 416 F.3d at 220.

  B. Prejudice

Leave to amend the pleadings may also be denied on the grounds of bad faith, dilatory motive, or undue delay on the part of the moving party. *See id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). "In short, parties to a litigation may not file motions to amend 'primarily to cause harassment and delay.'" *Otsuka Pharm. Co. v. Barr Labs, Inc.*, No. 07-1267, 2008 U.S. Dist. LEXIS 99214, at *13 (D.N.J. Dec. 5, 2008) (quoting *Bygott v. Leaseway Transp. Corp.*, 637 F. Supp. 1433, 1447 (E.D. Pa. 1986)).

Delay alone, however, is insufficient grounds for denial of leave to amend. *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988). In applying Rule 15(a), the United States

6

Court of Appeals for the Third Circuit regards the possibility of prejudice to the non-moving party as the "touchstone for the denial of the amendment." *Lorenz*, 1 F.3d at 1414 (quoting *Cronell & Co., Inc. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  The non-moving party, however, has a heavier burden than merely claiming prejudice; it must show that an unfair disadvantage or deprivation will result by allowing the amendment.  *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the V.I., Inc.,* 663 F.2d 419, 426 (3d Cir. 1981).

"Prejudice," for purposes of determining whether to allow the proposed amendments, involves serious impairment of the non-movant's ability to present its case.  *Id.*; *see also Harter v. GAF Corp.*, 150 F.R.D. 502, 509 (D.N.J. 1993).  Incidental prejudice to the non-moving party is not a sufficient basis for denial of an amendment; prejudice becomes "undue" only when the non-moving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered.  *Heyl & Patterson Int'l, Inc.*, 663 F.2d at 426; *see also DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 615 (D.N.J. 1990).  Prejudice can also be caused in a number of different circumstances, such as when the amended pleading will "(1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Textron Fin.-New Jersey, Inc. v. Herring Land Grp., LLC*, No. 06-2585, 2009 U.S. Dist. LEXIS 19539, at *12–13 (D.N.J. Mar. 11, 2009) (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).  Similarly, prejudice may result when the amendment would force a party to change their litigation tactics or case theory. *Stallings v. IBM Corp.*, No. 08-3121, 2009 U.S. Dist. LEXIS 81963, at *49 (D.N.J. Sept. 8, 2009) (citing *Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 428 (3d Cir. 1987)).

### III.     ANALYSIS

Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this Rule does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not suffice; a complaint must contain more than "naked assertions" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The Original Complaint in this matter unquestionably fails to meet this standard. The issues before the Court, therefore, are whether Plaintiffs' proposed Amended Complaint states a valid claim for relief and whether this amendment should be permitted. Crown argues that the proposed Amended Complaint fails to set forth a valid cause of action (i.e., the amendment is futile) and that permitting the amendment would cause Crown undue prejudice. After reviewing the proposed Amended Complaint, however, the Court believes that it sufficiently pleads a cause of action and that any prejudice to Crown is both incidental and a result of Crown's own acquiescence in Plaintiffs' conduct. Therefore, Plaintiffs' cross-motion to amend will be granted and Crown's motion will be denied.

New Jersey's Products Liability Act ("PLA"), N.J.S.A. 2A:58C-1, *et seq.*, provides that "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: . . . (c.) was designed in a defective manner." N.J.S.A. 2A:58C-2. In order to plead a prima facie case under the PLA and avoid dismissal a plaintiff must plead: (1) that the defendant manufactured the product; (2) that a

reasonably foreseeable user was injured; (3) that the product was defective; (4) that the defect existed when it left the defendant's control; and (5) that the defect was the factual and proximate cause of the plaintiff's injury. *See Durkin v. Paccar*, No.10-2013, 2010 U.S. Dist. LEXIS 110999, at *20–21 (D.N.J. Oct. 19, 2010) (citing *Myrlak v. Port Auth. of N.Y. and N.J.*, 723 A.2d 45, 52 (N.J. 1999); *Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996); *Jurado v. W. Gear Works*, 619 A.2d 1312, 1317 (N.J. 1993)). The proposed Amended Complaint meets this standard. Crown argues that Plaintiffs must allege facts showing why an alternative design is feasible, why the manufacturer is required to limit the risk at issue, or other facts to support a risk-utility analysis. The Court, however, does not believe that this level of factual pleading is necessary. Although a plaintiff is required to put the defendants on notice of the claims asserted, as well as the factual basis for those claims, plaintiffs are not required to provide any and all evidence necessary to prove these claims within the pleadings. Therefore, because the proposed Amended Complaint sufficiently states a claim for relief under the PLA, the amendment would not be futile.

      Even though the Amended Complaint does set forth a valid claim, Crown argues that this amendment should not be permitted because it would suffer undue prejudice as a result of this late amendment. When a party moves to amend its pleadings and the other party asserts undue delay, "the trial court must balance the imposition to the non-moving party against the movant's reason for delay in seeking the amendment." *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 147 (D.N.J. 1998) (citing *Coventry*, 856 F.2d at 520). There appears to be no valid reason for the delay in seeking the amendment in this case. Plaintiffs were aware of the underlying facts pertinent to their claims prior to filing the Original Complaint. For nearly a full year, however, Plaintiffs have delayed informing Crown of these facts so that they could develop a case strategy. It was not until after the close of written discovery and the creation of Plaintiffs' expert report

that Plaintiffs finally sought to amend their complaint to the point where it could avoid dismissal. It is not the purpose of notice-pleading under Rule 8(a), nor is it the intent of the liberal amendment provisions of Rule 15, to permit litigation to proceed along this course. "Discovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded." *Giovanelli v. D. Simmons Gen. Contracting*, No. 09-1082, 2010 U.S. Dist. LEXIS 23685, at *17 (D.N.J. Mar. 15, 2010) (citing *Twombly*, 550 U.S. at 563 n.8). Similarly, discovery is not meant to serve as a basis for plaintiffs to develop a legal theory on which they can prevail. *See Plastipak Packaging, Inc. v. DePasquale*, 363 F. App'x 188, 192 (3d Cir. 2010); *see also Burns v. Lavender Hill Herb Farm, Inc.*, 167 F. App'x 891, 894 (3d Cir. 2006) (rejecting argument that plaintiff was entitled to go on "a court-anointed fishing expedition" in attempt to meet pleading requirement of establishing personal jurisdiction over a defendant).

In *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197 (3d Cir. 2006) the Third Circuit was presented with an appeal from a district court order dismissing plaintiff's complaint under Rule 12(b)(6). The court rejected an argument by plaintiffs that the complaint should have been reinstated because discovery might reveal facts that establish a basis for their claims. There, like here, plaintiffs "were well-positioned to know, upon review of their past experience," the facts giving rise to the cause of action. *Id.* at 205. To the extent that these facts were not contained in the complaint, they should have been. *Id.* This is not a case where, in the Original Complaint, "the fish [was] identified, and the question is whether it is in the pond." *Compagnie Des Bauxites De Guinee v. L'Union Antlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) (quoting *Surpitski v. Hughes-Keenan Corporation,* 362 F.2d 254, 255–56 (1st Cir. 1966)). Rather, this case has proceeded for nearly year without any notice as to what design defect

allegedly existed in Crown's forklift; Plaintiffs failed to identify "the fish," in hopes that one would later turn up during discovery.

There are at least three more considerations relevant to Plaintiffs' motive for this delay. First is the fact that this motion to amend was not filed until nearly a year after the Plaintiffs' claims were initially filed. Second, this motion was filed after Plaintiffs were informed on at least eight separate occasions—by both the Court and the opposing party—that further factual allegations were required to avoid dismissal. *Cf. Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc.*, 416 F. Supp. 2d 861, 871 (E.D. Ca. 2004) ("Where the primary motivation for an amendment is surviving summary judgment, the movant's motive weighs against granting leave to amend."). Third, this motion to amend comes over six months after the time permitted to file an amended pleading in the Court's first Pretrial Scheduling Order. *See* (Pretrial Scheduling Order of July 28, 2011 ¶ 5). Thus, it appears to the Court that Plaintiffs' undue delay was a result of an abuse of the discovery process.

Regardless of Plaintiffs' underlying motivations, however, Crown is equally as culpable in allowing this case to proceed to this point. Crown bears considerable responsibility for permitting Plaintiffs to engage in their ultimately successful fishing expedition. Just as Plaintiffs were less than diligent in bringing their motion to amend, Crown was also less than diligent in seeking a court order that would either dismiss this case or clarify the issues. Although Defendant's attempt to avoid court intervention in a discovery spat is in some sense laudable, at some point litigants must take steps to move a case forward. This is especially true when the dispute involves such a basic and essential part of the litigation. Although Crown has undoubtedly been subject to incidental prejudice, the Court is not convinced that this prejudice is "undue" in light of Crown's acquiescence in allowing this case to proceed as it has.

Further, there is no indication that Crown will be unable to present facts or evidence that it otherwise would have presented but for Plaintiffs' delay or some other similarly harsh prejudice. *See Heyl & Patterson Int'l, Inc.*, 663 F.2d at 426. Although written discovery may need to be re-opened to a limited extent, this alone does not require the Court to deny Plaintiffs' cross-motion. Depositions have not yet been taken in this case and the deadline for expert discovery also has not passed. *See, e.g.*, (Scheduling Order of Mar. 28, 2012 (extending the time to complete depositions and expert discovery is extended pending resolution of this motion)) [11]. To the extent that Plaintiffs' late motion to amend has caused, and will continue to cause, delay and increased costs in litigating this case, both parties are at fault.

"[T]he federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Now that Plaintiffs have asserted a viable claim, this case should be allowed to be heard on the merits. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. This is especially true in a situation such as this, where denying Plaintiffs' cross-motion to amend would result in the harsh consequence of terminating this case.

Finally, the Court will deny Defendant's motion for summary judgment without prejudice pending completion of discovery. *See generally Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845–46 (3d Cir. 1992) (summary judgment disfavored prior to completion of discovery).

### IV.  CONCLUSION

For the reasons stated above, Plaintiffs' Cross-Motion to Amend will be granted and Defendant's Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment will be denied.  An appropriate Order will follow.

 */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: June 1, 2012