UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Keith DYMNIOSKI and JoAnn DYMNIOSKI<br><br>Plaintiffs,<br><br>v.<br><br>CROWN EQUIPMENT CORP.; COSTCO; ABC, INC. (1-25); and JOHN DOE (1-25); said names ABC, Inc. (1-25), and John Doe (1-25), being fictitious, jointly, individually and in the alternative,<br><br>Defendants. | Civ. No. 11-3696<br><br>OPINION |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter is before the Court upon two motions by Defendant Crown Equipment Corporation ("Defendant"): (1) a Motion to Preclude the Testimony of Plaintiff's Expert, Bruce Gorsak, (Doc. No. 38); and (2) a Motion for Summary Judgment, (Doc. No. 39). Plaintiffs oppose. (Doc. Nos. 40, 41). The Court has considered the motions and reached a decision based upon the written and oral submissions of the parties. For the reasons included herein, the Court grants both of Defendant's motions.

BACKGROUND

This action originates from the filing of Plaintiff's May 26, 2011 Complaint in New Jersey Superior Court, Somerset County. (Doc. No. 1, Att. 1, Ex. A). On June 27, 2011,

Defendant filed a notice of removal, (Doc. No. 1, Not. of Removal), and on June 4, 2012, this Court permitted Plaintiffs to amend their Complaint and denied Defendant's Motion for Summary Judgment without prejudice pending discovery. (Doc. Nos. 21, 22).

The facts of the underlying matter are as follows. On July 12, 2009, Plaintiff Keith Dymnioski ("Mr. Dymnioski") was injured during the course of his employment while operating a Crown stand-up rider forklift, model RC 5535-30. (Doc. No. 39, Att. 1, Statement of Undisputed Material Facts, "SUMF," at ¶ 2).[1] Specifically, his leg was seriously injured when it "was able to leave" the operator compartment and the forklift struck a building column. (Doc. No. 23, Amd. Compl. at ¶ 2; SUMF at ¶¶ 3-4).

Plaintiffs allege that the subject forklift was defectively designed because Defendant failed to equip the lift with an operator compartment door and because Defendant failed to implement a prevention algorithm in the lift's braking system. (SUMF at ¶ 5). According to Plaintiffs, these design defects existed at the time the Crown RC5500 was in the possession and control of Defendant, (Amd. Compl. at ¶ 3), and without them, Mr. Dymnioski's injuries would not have occurred. (SUMF at ¶ 5).[2]

---

[1] Plaintiffs have failed to submit a responsive statement of undisputed material facts as required by Local Rule 56.1. Under that Rule, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). The Court is careful to keep in mind, however, that "such local rules are permissible so long as district courts do not use them to bypass the merits analysis required by Federal Rule of Civil Procedure 56." *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 137 (3d Cir. 2012). In this case, the nature of the statement of material facts and the underlying merits are not at war, and thus, the facts cited in this opinion from Defendant's Statement of Undisputed Material Facts are deemed admitted.

[2] Plaintiffs' Amended Complaint contains 2 counts: Count I demands damages for the losses sustained by Mr. Dymnioski as a result of his injury, including personal physical injuries, permanent disability, expenses for hospital and medical attention, loss of wages, and the inability to attend to his usual affairs and occupation. (Amd. Compl.). Count II demands damages for the losses sustained by Plaintiff JoAnn Dymnioski ("Mrs. Dymnioski"), who, as Mr. Dymnioski's

In support of their claims that the forklift was defective in design due to the lack of a door enclosing the operator compartment and a prevention algorithm in the forklift's braking system, Plaintiffs have offered the testimony of Bruce Gorsak ("Mr. Gorsak"). (*See* Doc. No. 38, Att. 3, Ex. F, Gorsak Report). Defendant argues that Mr. Gorsak is unqualified and has failed to support his opinions as required by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Civil Procedure 702. Defendant has accordingly moved to preclude Mr. Gorsak's testimony. (Doc. No. 38). Should the Court grant Defendant's motion and exclude Mr. Gorsak's testimony, Defendant has also moved for summary judgment based upon Plaintiffs' failure to proffer a qualified expert in support of their design defect claim. (Doc. No. 39).

Plaintiffs have opposed both motions, despite failing to submit either a responsive statement of undisputed material facts or a statement of disputed facts with their opposition to summary judgment. (Doc. Nos. 40, 41). On May 7, 2013, this Court held an oral hearing on the record in which both parties argued as to the admissibility of Mr. Gorsak's testimony and the matter of summary judgment. (Doc. No. 44). After due consideration of both the written and oral arguments of the parties, the Court now issues this Opinion.

DISCUSSION

Because Defendant's motion for summary judgment is contingent upon the exclusion of Mr. Gorsak's expert testimony, the Court will first address the motion to exclude before considering whether this matter is appropriate for Rule 56 dismissal.

1. <u>Motion to Preclude Testimony of an Expert</u>

    Under Federal Rule of Evidence 702,

---

wife, allegedly suffered and will continue to suffer a deprivation of the services, earnings, comfort, society, and consortium of her husband for a long period of time. (Amd. Compl.).

> A witness, qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Courts frequently distill Rule 702 into a three-factor list that requires expert testimony to be (1) proffered by a sufficiently qualified expert; (2) reliable; and (3) fit. *In re Paoli R.R. Yard PCB Litig. (Paoli II)*, 35 F.3d 717, 741-43 (3d Cir. 1994) (citing *Daubert*, 509 U.S. 579); *Ortiz v. Yale Materials Handling Corp.*, No. 03-3657, 2005 WL 2044923, at *3 (D.N.J. Aug. 24, 2005). The Court, in reaching its decision, will first review the question of Mr. Gorsak's qualifications before turning to whether or not his proposed testimony is reliable and fit.

  A. <u>Mr. Gorsak's Expert Qualifications</u>

When considering an expert's qualifications, the trial court must determine whether a witness possesses "'specialized knowledge' with regard to the area he is testifying about." *Ortiz*, 2005 WL 2044923 at *3; *see Paoli II*, 35 F.3d at 741. Within the Third Circuit's liberal interpretation of Rule 702, *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003), "the basis of this specialized knowledge can be practical experience as well as academic training and credentials," *Fisher v. Walsh Parts & Serv. Co., Inc.*, 277 F. Supp. 2d 496, 508 (E.D. Pa. 2003) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)) (internal quotations omitted); *Hammond v. Int'l Harvester Co.*, 691 F.2d 646 (3d Cir. 1982). A court must be cautious not to exclude the expert testimony simply because that expert, in the view of the trial court, is neither the best nor most appropriately qualified. *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) (citing *In re Paoli R.R. Yard PCB Litig. ("Paoli I")*, 916 F.2d 829, 856 (3d Cir. 1990)). The strengths and weaknesses of an expert's qualifications are instead

frequently factored into the *weight* given to that expert's testimony, rather than its admissibility. *Id.* at 782.

The Court finds here that Mr. Gorsak's qualifications with respect to this particular subject matter are weak at best, even under a liberal gaze. Mr. Gorsak's favorable qualifications include his bachelor's degree in mechanical engineering, (Doc. No. 41, Att. 3, Ex. A., "Gorsak Dep.," at 14:13-15), his license as a forklift operator, (Gorsak Dep. at 27:4-7), his general familiarity with forklifts, (*see, e.g.*, Gorsak Dep. at 27:2-3, 7-9), and his experience with algorithms in other settings, (*see* Doc. No. 41, Att. 5, Ex. C, "Gorsak Report," at 10 (explaining that Mr. Gorsak had applied an algorithm on molding presses such that if any of the parameters to produce a good molded part did not conform to the setting for that specific part, it would not cycle to make a bad batch of parts)). He also, at one point, designed some material handling attachments for forklifts, (Gorsak Dep. at 22:13-20), studied to become a Professional Engineer, (Gorsak Dep. at 14:16-20), and has had membership in at least some seemingly relevant societies, (*see, e.g.*, Doc. No. 41, Att. 4, Ex. B, Gorsak Curriculum Vitae (specifying membership in the American Society of Safety Engineers)).

Defendant, however, is quick to point out both the limitations of the above qualifications and Mr. Gorsak's lack of qualifications generally. Despite his previous studies, Mr. Gorsak is *not* a Professional Engineer and does not have an advanced degree in engineering. (Gorsak Dep. at 14:16-20; 15:3-5). His forklift license applies to sit-down forklifts and he has almost no experience with stand-up rider forklifts. (Gorsak Dep. at 27:15-20, 27:21-25; 28:1-3; 28:9-12; 28:13-16). Indeed, he has never operated a Crown RC 55000 series stand-up rider forklift (the forklift at issue in this case), (Gorsak Dep. at 28:17-19), and his experience operating any stand-up rider lift is limited to one occasion that lasted for less than ten minutes, (Gorsak Dep. at

5

27:21-25; 28:1-3). Mr. Gorsak has never worked for a company that manufactures or designs forklifts, much less stand-up rider forklifts, (Gorsak Dep. at 29:12-14), he owns no patents for any type of design of material handling equipment, (Gorsak Dep. at 26:18-20), and he has never designed any type of forklift or a component part for a forklift. (*See generally*, Gorsak Dep. at 17, 18, 19, 20, 21, 22).

Significantly, Mr. Gorsak demonstrates ignorance with regard to the governing safety standards in place for the design and manufacture of the forklift at issue, in some instances, stating that a forklift operator should take the exact opposite course of action than is recommended.[3] He has never drafted any instructions, warnings, labels, or operator or training manuals for forklifts, (Gorsak Dep. at 20:2-4, 5-8), nor is he a member of any national, governmental, or other organization responsible for developing or evaluating the standards for material handling equipment, (Gorsak Dep. at 30:25-31:1-6). Despite the context-specific nature of forklift safety design – i.e., whether or not a forklift is used in circumstances that require the ability to quickly leave the operator compartment – Mr. Gorsak has admitted to not knowing precisely the activity for which a stand-up rider forklift is used, a fact which Defendant emphasizes makes safety determination difficult. (Gorsak Dep. at 67:23-68:6). Mr. Gorsak has also admitted to being unfamiliar with the type of forklift braking system employed in the Crown

---

[3] For example, in the event of a tipover, an off-the-dock accident, or a tractor pull away, Mr. Gorsak testified that the forklift operator should remain inside the compartment. (Gorsak Dep. at 79:19-80:12). The government and industry standards groups appear to counsel otherwise. (*See supra*, n. 7). Mr. Gorsak also expressed unfamiliarity with whether or not the American National Standards Institute or the Industrial Truck Standards Development Foundation had either considered or made statements with regards to whether or not the operator compartment in a stand-up forklift should be open. (Gorsak Dep. at 69:5-10; 85:2-7). Again, Defendant points to evidence that these institutes have indeed considered such an addition. (*See supra*, n.7).

forklift at issue in this case, raising the question of how he might be qualified to argue that it is defectively designed. (Gorsak Dep. at 72:17-19).

Aside from the seeming gap in Mr. Gorsak's safety standards knowledge, he also demonstrates certain failings with respect to the design of the improvements he suggests. With regards to the prevention algorithm, at least, although he states it is within his expertise "to set the parameters of which it would work," he has acknowledged that its actual design is outside of his expertise. (Gorsak Dep. at 83:1-2; 82:23-25; 83:1-5).

Based upon the above, the Court is reluctant to find Mr. Gorsak's qualifications sufficient to permit consideration of his testimony by a jury, even in light of the Third Circuit's liberal interpretation of Rule 702. However, given that Plaintiffs' case rests upon whether or not this testimony will be admitted, the Court will undergo a reliability and fitness analysis below, providing an additional ground for exclusion.

B. The Reliability and Fitness of Mr. Gorsak's Proffered Testimony under Rule 702 and *Daubert*

When analyzing the reliability and fitness of expert testimony, the Court must act as "gatekeeper." *Daubert*, 509 U.S. at 597. Reliability requires that an expert's opinions "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Calhoun*, 350 F.3d at 320-21. In the Third Circuit, courts look to an eight-factor, non-exclusive list based partially upon the factors enumerated in *Daubert* to determine:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

7

*Paoli II,* 35 F.3d at 742, n. 8; *Calhoun*, 350 F.3d at 321.[4] A court should keep in mind, however, that the test for admissibility is a flexible one, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1990), and that each factor in the above list "need not be applied in every case." *Ortiz*, 2005 WL 2044923 at * 4.

When considering *fitness*, the court must conclude that the expert's testimony assists the trier of fact, s*ee Paoli II*, 35 F.3d at 742-43, and "is relevant to the task at hand," *Daubert*, 509 U.S. at 597; *Ortiz*, 2005 WL 2044923 at *3. "Admissibility depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" *Id.* at 743 (quoting *United States v. Downing,* 753 F.2d 1224, 1237 (3d Cir. 1985)).

In analyzing the reliability and fitness of Mr. Gorsak's proffered testimony, Defendant points the Court to case law emphasizing that "[o]rdinarily, a *key* question . . . in determining whether a theory or technique is scientific knowledge that will assist the trier of fact [is] whether it can be (and has been) tested." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000) (quoting *Daubert*, 509 U.S. at 593).[5] Courts of both the Third Circuit and the District of New

---

[4] This list roughly incorporates the four factors enumerated in *Daubert*, which established that a court must consider: "(1) whether the theory can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the rate of error; and (4) whether the theory or technique has been generally accepted within the putative expert's respective community." *Worrell v. Elliott & Frantz*, Civ. No. 09-4443, 2013 WL 1628948, at *3 (D.N.J. 2013) (citing *Daubert*, 509 U.S. at 593).

[5] Defendant also points to the factually similar Seventh Circuit case, *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001), for its thorough analysis of why testing is important in a design defect case. In that case, Plaintiff had also brought suit for the lack of an operator compartment door on a stand-up forklift. *Id.* at 868. The trial court then excluded Plaintiff's expert testimony under *Daubert*. *Id.* Upon review, the Seventh Circuit found that the most "glaring" problem with regards to the expert testimony in issue was "the lack of testing, or more generally the failure to take any steps that would show professional rigor in the assessment of the alternative designs." *Id.* at 869. The court further emphasized that in alternative design cases, it

8

Jersey have excluded expert testimony regarding a purportedly safer alternative design based in part on the proffered expert's failure to prototype and/or test his alternative design theory. *Kolokowski*, 2009 WL 2857957 at *7-12 (holding an expert's testimony to be unreliable under *Daubert* where the expert failed to build prototypes or create mock-ups of his proposed alternative designs for an allegedly defective pallet jack); *Ortiz*, 2005 WL 2044923 at *10 ("Given the complete lack of testing Sevart conducted with stand-up forklifts in lateral tip-overs and his inability to provide a basis for the conclusions in his own charts and findings, it is . . . doubtful that Sevart's testimony would be helpful to a jury in determining whether the . . . forklift was defective."); *Oddi*, 234 F.3d at 158 (finding that where the expert's opinion was "based on nothing more than his training and years of experience as an engineer," it was therefore '*ipse dixit*.').

Testing in this case, argues Defendant, is especially important because *existing* tests demonstrate that adding an operator compartment door to the relevant forklift (which is used on docks to load and unload trailers) creates a risk of severe injury and death. *See, e.g.*, *Ortiz*, 2005 WL 2044923 at * 9 (citing a report indicating that "although a rear door may save the loss of a foot or leg, it is at the expense of death when the truck is tipped over or driven off the dock."); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001) (noting the importance of testing where the record suggested that "[i]n some environments, . . . the presence of a rear door could exacerbate injuries to the operator by slowing an escape from a forklift tipping over or falling off of a dock").

---

had "consistently recognized the importance of testing the alternative design." *Id.* at 870. As the court explained, many of the considerations that go into an alternative design (pricing, maintenance costs, efficiency, and so on) are "product and manufacturer specific," and cannot be "reliably determined without testing." *Id.*

Here, Mr. Gorsak did not conduct any testing with regard to his hypothesis concerning either the door or the braking algorithm. (Gorsak Dep. at 69:14-19; 70:4-6; 70:10-13; 71:13-17). He did not prototype or install a door or an algorithm on an exemplar forklift to test their capacities to prevent injury. (Gorsak Dep. at 47:15-25; 74:24-25; 77:3-6). While he provided a preliminary sketch of the door, that sketch was far from comprehensive and failed to specify details such as the material to be used, the type of latching mechanism, the door's dimensions and its weight. (*See generally*, Gorsak Dep. at 76-79). For the preventive braking algorithm, he proffers little more than a theoretical concept, and no proposed design for review.[6] (Gorsak Dep. at 74:15-25; 74:20-23, 74:15-19).

Mr. Gorsak also offered little to no evidence of a scientific methodology utilized for reaching and developing either of his proposed design defect theories. Although his report contains general safety analyses and observations, he does not cite to any specific reports or materials in support of a preventive braking algorithm, and only cites to a single master's thesis in support of the enhanced safety effectiveness of an operator compartment door. (Doc. No. 38, Att. 3, Ex. F, Gorsak Report at 9). There is also no evidence that he conducted any cost-benefit analysis in concluding either that the door or brake system was practical. *Cuffari v. S.B. Power Tool Co.*, 80 F. App'x 749, 751 (3d Cir. 2003) (finding a district court did not abuse its discretion in excluding an expert's opinion in a design defect case where it was unsupported by recent, reported testing and where expert had failed to conduct a cost-benefit analysis regarding the proposed design). He also appears to have overlooked "any negative safety implications mitigating against using" either the door or the algorithm, *id.* at 751, which, at least in the case of

---

[6] Indeed, Mr. Gorsak admitted in deposition testimony that, although he could set the parameters within which such an algorithm could function, the actual design of such was outside the scope of his expertise. (Gorsak Dep. at 82:23-25, 83:1-5).

the door, appear significant, *Ortiz*, 2005 WL 2044923 at * 9 (citing favorably to a 1995 report which found that "any device, such as a latching door, which slows or prevents an operator's egress in an emergency situation, such as a tip-over or off-dock accident, creates an unacceptable risk of severe injury or death," even where a foot or leg may in other instances be saved).

There are also concerns with regards to the absence of peer review and the lack of general acceptance of Mr. Gorsak's proposed opinions. Mr. Gorsak's ideas have not been subject to peer review, (*see e.g.*, Gorsak Dep. at 12:19-23; 12:24-25-13:1-5; 13:6-17), and there is no evidence that his opinions, especially the opinion concerning the installation of a door for the operator compartment, are accepted by the community. In fact, Defendant points to several instances wherein the industry, government, and various standards organizations reject the installation of such a door.[7] Mr. Gorsak himself could not name any manufacturers who have added such a door, or admit to having seen in operation a stand-up rider forklift equipped with an operator compartment door. While the minority nature of Mr. Gorsak's opinions would not alone justify the exclusion of his testimony, the Court notes that the lack of community in this case only further adds to the lack of reliable methodology employed. *See, e.g.*, *Fisher*, 277 F. Supp. 2d at 508 ("As the Third Circuit has recognized, the test for admissibility does not require a party to

---

[7] Defendant provides evidence that the Department of Defense's standards for forklifts provide that the operator's platform "shall . . . permit unobstructed egress from the rear of the truck, (Doc. 38, Att. 3, Ex. J, § 3.3.2.1), and that the American National Standards Institute ("ANSI") has rejected on two separate occasions proposals to require that stand-up forklifts be equipped with occupant compartment doors (in 1987 and 1996), *Ortiz*, 2005 WL 2044932 at *9, n.8. Moreover, ANSI states expressly, *inter alia*, that "Stand-ups, rear entry end control, narrow aisle, and reach trucks shall be designed with open operator compartments to permit easy ingress and egress in the event of an imminent tipover or off-the-dock accident," (Doc. No. 38, Att. 3, Ex. I, B56.1 2004 Safety Standard § 7.41), and that "Operator protection means shall be designed so as . . . to permit rapid exit in an emergency," (Doc. No. 38, Att. 3, Ex. M, B56.1b-1990 Safety Standards § 7.28.3). The Occupational Safety and Health Administration ("OSHA") has also adopted ANSI's safety standard with regards to forklifts. (Doc. No. 38, Att. 3, Ex. H, 29 C.F.R. § 1910.178(a)(2)). Finally, Plaintiffs have failed to identify any manufacturer that offers operator compartment doors as standard equipment.

demonstrate that its expert's opinions are correct, but rather whether it is based upon reliable methodology.").

Finally, Defendant argues that its braking system design is generally accepted and based on sound engineering, and emphasizes that Mr. Gorsak has failed to provide an example of a prevention algorithm in a currently manufactured forklift's braking system, or any supporting literature or testing for a preventive algorithm. Indeed, in his deposition, Mr. Gorsak was unwilling to testify that his proposed braking algorithm would have prevented the accident, (Gorsak Dep. at 83:11-16), and admitted to not knowing the type of braking system utilized, (Gorsak Dep. at 72:17-19).

Given all of the above, the Court finds that Mr. Gorsak has "fail[ed] to satisfy either *Daubert's* factors *or any other* set of reasonable reliability criteria." *Kumho Tire*, 526 U.S. at 158. Given the discretion granted by Rule 702 "to determine reliability in light of the particular facts and circumstances of the particular case," *id.*, and the Court's further determination that such unreliable testimony would not be helpful to a jury attempting to determine whether or not the forklift in issue is defectively designed, the Court grants Defendant's motion to preclude Mr. Gorsak's testimony.

2. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits," and must "view the inferences to be drawn from the underlying

facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. In other words, the non-moving party must "make a showing sufficient to establish the existence of *an element essential* to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322 (emphasis added). "When a plaintiff is required to submit expert testimony to establish an essential element of his or her case, the court may grant summary judgment if that testimony is excluded under *Daubert*." *Kolokowski v. Crown Equip. Corp.*, No. 05-4257, 2009 WL 2857957, at *4 (D.N.J. Aug. 27, 2009).

Here, there is no dispute as to the events of the accident, merely as to whether or not a design defect led to Mr. Dymnioski's injury. "[I]n a design defect case the ultimate inquiry is whether the manufacturer acted in a reasonably prudent fashion in designing and fabricating the product." *Leslie v. United States*, 986 F. Supp. 900, 907 (D.N.J. 1997) *aff'd*, 178 F.3d 1279 (3d Cir. 1999) (citing *Zaza v. Marquess & Nell, Inc.*, 144 N.J. 34, 47-48 (1996)). In order to establish a *prima facie* case of strict liability under a design-defect theory, a plaintiff must demonstrate that the product was "not reasonably fit, suitable and safe for its intended purpose," N.J. Stat. Ann. 2A:58C-2, and that: "(1) the product was defective; (2) the defect existed when the product left the manufacturer's control; and (3) the defect caused injury to a reasonably foreseeable user or victim." *Leslie*, 986 F. Supp. at 907 (citing *Zaza,* 144 N.J. at 49; *Jurado v. Western Gear Works,* 131 N.J. 375 (1993)).

13

Courts in the District of New Jersey have found that expert testimony is required in a design defect case where the allegedly defective product involves "a complex instrumentality." *Kolokowski*, 2009 WL 2857957 at * 4 (quoting *Ortiz*, 2005 WL 2044923 at *11); *Lauder v. Teaneck Volunteer Ambulance Corps.*, 368 N.J. Super. 320, 331 (2004). In other words, expert testimony is required where "a jury would not be able to simply look at [the] design [of a complicated piece of equipment] and determine whether or not it was defective." *Ortiz*, 2005 WL 2044923 at * 11.

Defendant argues that Plaintiffs' Amended Complaint should be dismissed under Rule 56 on the basis that Plaintiffs have failed to provide expert testimony sufficient to establish a *prima facie* case of design defect. Specifically, Defendant contends that because forklifts have been found by other district courts to be a complex instrumentality, *see, e.g.*, *Ortiz*, 2005 WL 2044923 at *11, Plaintiffs must submit expert testimony in support of their claim. In the event the Court excludes Mr. Gorsak's testimony, Defendant argues that Plaintiffs' case lacks the requisite expert testimony to show either that the forklift at issue is defective or that the alleged defect proximately caused Mr. Dymnioski's injury (or, by extension, Ms. Dymnioski's injuries).

Since the Court in this instance *has* found Mr. Gorsak's expert testimony sufficiently lacking so as to warrant exclusion, and as Plaintiffs have offered no other expert witness, the Court agrees with Defendant that Plaintiffs have failed to produce evidence sufficient for a reasonable jury to find that the forklift was defective and caused Mr. Dymnioski's injury. *Booth*, 166 F. Supp. 2d at 223 (finding that in order "to survive summary judgment without the expert testimony of their export as to causation, plaintiffs must produce sufficient evidence for a reasonable jury to find that the [product] was defective and caused [the accident]").

Accordingly, the Court finds Ms. Dymnioski has also failed to support her *per quod* claims for loss of consortium sufficient to withstand summary judgment.

CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Preclude the Expert Testimony of Bruce Gorsak, (Doc. No. 38), and Defendant's Motion for Summary Judgment, (Doc. No. 39). An appropriate Order accompanies this Opinion.

/s/Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: __May 24, 2013___